UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------------X
SIWELL, INC. D/B/A CAPITAL MORTGAGE
SERVICES OF TEXAS,                                            Case No.: 21-cv-13852

                             Plaintiff,

               -against -

ALEXEI VOLOSEVICH; TAMMY SEWELL;
JOSEPH JAMES REAL ESTATE; FOUNDATION
REAL ESTATE AND CLEAR SKIES TITLE
AGENCY LLC;
                             Defendants.

------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO CLEAR SKIES
<u>MOTION TO DISMISS</u>**


**HASBANI & LIGHT, P.C.**

Danielle P. Light, Esq.
Peter Y. Roh, Esq.
450 Seventh Avenue, Ste 1408
New York, New York 10123
(212) 643-6677
proh@hasbanilight.com
*Counsel for Plaintiff Siwell, Inc., d/b/a*
*Capital Mortgage Services of Texas*

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  LEGAL STANDARD FOR DEFAULT JUDGMENT IN A FORECLOSURE .................... 5

III. ARGUMENT ....................................................................................................................... 6

   A.   Plaintiff Has Alleged Specific Facts That Establish Clear Skies' Participation In The Fraudulent Short Sale Scheme And Established A Proper RICO Claim. .................................... 6

   B.   Plaintiff has plead allegations sufficient to establish Clear Skies' Participation in its tortious interference with a contact. ........................................................................................ 8

IV.  CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S.Ct. (2007), ................................................................................ 5, 6

*Goldenstein v. Repossessors Inc.*,
  815 F.3d 142 (3d Cir. 2016) .................................................................................... 7, 9

*Hedges v. United States*,
  404 F.3d 744 (3d Cir.2005), ......................................................................................... 5

*HT of Highlands Ranch, Inc., v. Hollywood Tanning Systems, Inc.*,
  590 F. Supp. 2d 677 (D.N.J 2008) ............................................................................... 7

*LoanDepot.com v. CrossCountry Mortgage Inc.*,
  399 F. Supp. 3d 226 (D.N.J 2019) ............................................................................. 11

*Lum v. Bank of America*,
  361 F.3d 217 (3d Cir 2004) .......................................................................................... 7

*Oakwood Labs., LLC v. Thanoo*,
  No. 17-CV-05090(PGS), 2018 WL 2973384, at *6 (D.N.J. June 12, 2018) ....... 10, 11

*Phillips v. County of Allegheny*,
  515 F.3d 224 (3d Cir.2008) .......................................................................................... 6

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361 (3d Cir.2002) ............................................ 6

*ThermoLife Int'l LLC v. Connors*,
  No. CIV. 2:13-4399 KM, 2014 WL 1050789, at *3 (D.N.J. Mar. 17, 2014) ....... 10, 11

*Umland v. PLANCO Fin. Serv., Inc.*,
  542 F.3d 59 (3d Cir.2008) ............................................................................................ 5

*United States v. Eufrascio,*
  935 F.2d 553 (3d Cir. 1991) ......................................................................................... 7

*Victaulic Co. v. Tieman*,
  499 F.3d 227 (3d Cir.2007) ...................................................................................... 6, 9

**Statutes**
18 U.S.C § 1962 ............................................................................................................ 7, 8, 9

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 5, 6, 12

Fed. R. Civ. P. 8(a)(2) ...................................................................................................... 11

Fed. R. Civ. P. 9(b) .................................................................................................................. 10

N.J.S.A 17:46B-9 ..................................................................................................................... 9

**I.   INTRODUCTION**

This action seeks to recover damages based on the defendants' fraudulent short sale scheme. In response to Plaintiff's Complaint, Defendant Clear Skies Title Agency ("Defendant" or "Clear Skies") brings this instant Motion seeking to dismiss this action as against itself. Plaintiff respectfully submits this Memorandum of Law in opposition of the instant Motion to Dismiss. Specifically, for the reasons provided below, Plaintiff has properly plead sufficient facts to establish Clear Skies' participation in the fraudulent short sale scheme by the defendants. The facts in Plaintiff's complaint regarding the fraudulent short sale scheme are sufficient to state a claim against Clear Skies in each and every cause of action below. Accordingly, Clear Skies' Motion to dismiss must be denied.

**II.   STATEMENT OF FACTS**

In or about and between June 3, 2016 and September 15, 2017, the defendants Tammy Sewell, Alexei Volosevich, Joseph James Real Estate, Foundation Real Estate and Clear Skies, together with others, conspired to defraud lenders, including Plaintiff, as servicer for Ginnie Mae on certain mortgage loans that were in default (collectively, the "Short Sale Victims") by providing them with false, misleading and incomplete information to induce them to approve short sales at fraudulently depressed prices, thereby causing losses to the lenders, servicers and Ginnie Mae (the "Short Sale Scheme").

Tammy Sewell and Alexei Volosevich and several other individuals (collectively, the "Short Sale Co-Conspirators"), worked both together and separately to sell properties at fraudulently depressed prices and then resell or "flip" the properties for large profits.

The Short Sale Scheme originated under the direction of the defendant Alexei Volosevich with the assistance of the defendants Tammy Sewell, and others. Alexwi

1

Volosevich then replicated the Short Sale Scheme using defendant Clear Skies to conduct the closings, insure title and "flip" the properties.

With support from Tammy Sewell, Alexei Volosevich had the borrowers submit (a) an agreement with him to list the property for sale; (b) an authorization to allow Alexei Volosevich and Foundation Real Estate to negotiate the short sale with the lender on the borrower's behalf; and (c) a contract to sell the property to a third party for a depressed price. These documents were typically sent to the servicer, often located outside of New Jersey, by an electronic mail transmittal that originated from New Jersey, such as an email or facsimile.

After a borrower agreed to sell his or her property in a short sale coordinated by the Short Sale Co-Conspirators, Tammy Sewell would approve steeply discounted amounts that went beyond the scope of the HUD requirements for approving short sale amounts.

Money was then wired from the buyer to the servicer, despite the lack of approval from HUD on the short sale amount.

Tammy Sewell would then receive a payment, as an incentive, from Alexei Volosevich, for "approving" the short sale and allowing the scheme to carry on.

When the Short Sale Co-Conspirators submitted documentation to obtain approval for a short sale, they provided false, misleading, and incomplete information to the lender or servicer's employee, Tammy Sewell. These documents were typically sent to the lender or servicer, often located outside of New Jersey, by a wire transmittal that originated from New Jersey, such as an email or facsimile. Furthermore, the Short Sale Co-Conspirators did not disclose all the past and future payments, including fees and commissions, to be paid to the Short Sale Co-Conspirators, such as Tammy Sewell, in connection with the short sale. The money due to the lender from a short sale often was transmitted by a wire transfer to the

2

lender's or servicer's bank account after the closing.

During different and sometimes overlapping periods of time, various groupings of Short Sale Co-Conspirators worked together in the Short Sale Scheme. The defendants Tammy Sewell, Alexei Volosevich, Joseph James Real Estate, Foundation Real Estate and Clear Skies together with others, worked on fraudulent short sales coordinated by Alexei Volosevich where the primary beneficiaries of the Short Sale Scheme were him and Tammy Sewell.

The following are examples of short sale transactions executed by theShort Sale Co-Conspirators as part of the Short Sale Scheme.

A.   35 Norwood Street, Newark, New Jersey 07106

The defendants, together with others, coordinated a short sale transaction to purchase a residence located at 35 Norwood Street, Newark, New Jersey ("35 Norwood"), for a price of $155,361.85 on or about May 4, 2018, as follows:

In or about February 2018, mortgagor/borrower Gayle Scudder ("Scudder") submitted a request to be reviewed for loss mitigation, specifically a short sale, to Plaintiff as loan servicer for Ginnie Mae. The outstanding debt due to Plaintiff was $341,241.00 as of April 4, 2018.

On or about February 15, 2018, Scudder submitted a third-party authorization form to Plaintiff to allow defendant Alexei Volosevich and Foundation Real Estate to speak with Plaintiff on her behalf and to negotiate the short sale of 35 Norwood.

On or about January 27, 2018, Plaintiff hired an agent to complete an appraisal who returned a valuation of $175,000.00 for 35 Norwood.

35 Norwood was then sold for $173,000.00 and Plaintiff received $155,361.85.

Upon information and belief, Clear Skies acted as agent for the new mortgagee and insured the mortgage for the buyer of 35 Norwood.

B. <u>140 Badger Avenue Newark, New Jersey 07106</u>

The defendants, together with others, coordinated a short sale transaction to purchase a residence located at 140 Badger Avenue, Newark, New Jersey ("140 Badger"), for a price of $33,940.00 on or about September 13, 2016, as follows:

On or about January 26, 2016, mortgagor/borrower Fahanun Scott ("Scott") submitted a request to be reviewed for loss mitigation, specifically a short sale, to Plaintiff as loan servicer for Ginnie Mae.

On the same date, Scott submitted a third-party authorization form to Plaintiff to allow defendant Alexei Volosevich to speak with Plaintiff on her behalf and to negotiate the short sale of 35 Norwood.

On August 1, 2016, Plaintiff hired an agent to complete an appraisal who returned a valuation of $95,000.00 for 140 Badger (the "August 1, 2016 valuation").

On August 8, 2016, defendants Alexei Volosevich and Joseph James Real Estate submitted a dispute to defendant Tammy Sewell, who was then employed by Plaintiff, in response to the August 1, 2016 valuation. Defendant Alexei Volosevich and Joseph James Real Estate argued that the valuation of 140 Badger was closer to $65,000.00.

Despite the foregoing valuation by defendants Alexei Volosevich and Joseph James Real Estate, 140 Badger sold for $40,000.00 and Plaintiff received $33,940.00 in satisfaction of Scott's mortgage.

Upon information and belief, defendant Clear Skies acted as agent for the new mortgagee and insured the mortgage for the buyer of 140 Badger.

Tammy Sewell never received authority from HUD to accept the $40,000.00 sales price and the $33,940.00 payoff amount, which would have been required by HUD in order to finalize

the short sale.

Based on the above facts, Plaintiff initiated this action on July 20, 2021. *See generally* ECF Dckt # 1.

On September 15, 2021, Clear Skies filed the instant Motion.

## II.     LEGAL STANDARD FOR DEFAULT JUDGMENT IN A FORECLOSURE

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The Court must " 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *See Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008) (internal citations omitted); *see also Pinker v. Roche Holdings Ltd.,* 292 F.3d 361 (3d Cir. 2002). The moving party bears the burden of showing that no claim has been stated. *See Hedges v. United States,* 404 F.3d 744 (3d Cir. 2005).

Dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), *see also Umland v. PLANCO Fin. Serv., Inc.,* 542 F.3d 59 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the grounds of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly, supra*. Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *See id*. While "[t]he plausibility standard is not akin to a probability requirement ... it asks for more than a sheer possibility…" *See id*.

5

To survive a motion to dismiss, a civil plaintiff must allege facts that raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact). *See Victaulic Co. v. Tieman,* 499 F.3d 227 (3d Cir. 2007). (Internal citations and quotation marks omitted).

### III.   ARGUMENT

**A.   Plaintiff Alleged Specific Facts that Establish Clear Skies' Participation in the Fraudulent Short Sale Scheme and Established a Proper RICO Claim.**

Plaintiff's Complaint establishes both a i) a pattern ii) and racketeering activity enumerated by the RICO Act. A pattern of racketeering activity requires at least two predicate acts of racketeering. *See HT of Highlands Ranch, Inc., v. Hollywood Tanning Systems, Inc.,* 590 F. Supp. 2d 677 (D.N.J 2008); *see also Lum v. Bank of America*, 361 F.3d 217 (3d Cir 2004). Further Pursuant to 18 U.S.C § 1962:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C § 1962 makes it unlawful for a person associated with a RICO enterprise to participate in the conduct of such enterprise "through a pattern of racketeering activity or collection of unlawful debt." *See Goldenstein v. Repossessors Inc.,* 815 F.3d 142 (3d Cir. 2016); *See also United States v. Eufrascio,* 935 F.2d 553 (3d Cir. 1991*)* (holding that "a single act which would tend to induce another to repay on an unlawful debt incurred in the business of lending money" is sufficient for the predicate act, and there need not be actual exchange cash).

Here, Plaintiff went into details about the two transactions that constituted the short sale scheme. These two transactions showed a pattern of activity required by 18 U.S.C § 1962 ("RICO

6

Act"). Starting from paragraph 34, Plaintiff described the short sale regarding the property located at 34 Norwood Street, Newark NJ, in which Defendant acted as a title agent for the short sale transaction. *See* ECF Dckt # 1 at ¶ 34. The outstanding debt owed to Plaintiff was $341,241.00 as of April 4, 2018. *See id* at ¶ 35. However, with Defendant's participation, where it acted as a title agent for the new mortgagee, the property was sold for $173,000. *See id*. Plaintiff received only $155,361.85 from the short sale transaction. *See id*. This was not in compliance with the HUD requirements.

Similarly, starting from paragraph 36, Plaintiff described the short sale regarding the property located at 140 Badger Avenue, Newark NJ, in which Defendant acted as a title agent for the short sale transaction. *See* ECF Dckt # 1 at ¶ 36. with Defendant's participation, where it acted as a title agent for the new mortgagee, the property was sold for $40,000. *See id*. Plaintiff received only $33,940 from the short sale transaction. *See id*. Plaintiff conducted an appraisal on the property prior to the short sale of the property, which revealed that the property was worth $95,000. Therefore, the short sale was not in compliance with the HUD requirements. Therefore, by providing details of the two transactions constituting the short sale scheme, Plaintiff established the first prong of the RICO Act which requires a pattern of activity.

Plaintiff properly established the second prong of the RICO Act by alleging sufficient facts of Defendant's participation in the short sale scheme, which constituted an unlawful collection of a debt. As stated supra, the RICO Act makes it unlawful for a person associated with a RICO enterprise to participate in the conduct of such enterprise "through a pattern of racketeering activity or collection of unlawful debt. *See Goldenstein v. Repossessors Inc.,* 815 F.3d 142 (3d Cir. 2016). The Third Circuit in *Goldenstein* held that the unlawful collection of a collateral to satisfy a debt was an unlawful collection of a debt, consistent with the RICO Act.

Here, Plaintiff properly plead Clear Skies' participation in the short sale scheme above, which was in violation of the HUD requirements. As title agent in the two transactions above, Clear Skies was under an obligation to conduct a reasonable examination of title and cause to be made a determination of insurability of title. *See* N.J.S.A 17:46B-9. It should have known that the two transactions were not in compliance of the HUD requirements before insuring title on the property. Unlike what Clear Skies argues, Plaintiff does not allege conclusory allegations as it pertains to its involvement in the short sale scheme. When taking into context the HUD requirements outlined earlier in the Complaint, the facts clearly show Clear Skies dereliction of a statutorily imposed duty when it acted as a title agent in the short sale scheme. See *Victaulic Co., Supra*.

Therefore, Plaintiff has properly plead those facts that establish the second prong of the RICO Act. Specifically, Plaintiff alleged facts that establish that Clear Skies' participation in the short sale scheme was an unlawful collection of debt.

As Plaintiff demonstrated above, Plaintiff properly plead facts sufficient to demonstrate its right to relief under the RICO act. Accordingly, Defendant's motion to dismiss must be denied in its entirety.

**B.     Plaintiff Plead Allegations Sufficient to Establish Clear Skies' Participation in its Tortious Interference with a Contract.**

Plaintiff properly plead sufficient facts to establish that Clear Skies tortiously interfered with a contract. Specifically, Plaintiff provided sufficient facts that establish that Clear Skies intentionally abandoned its statutory duty to determine it could insure title on the property. Further, while the contract was already in default, Clear Skies' dereliction of duty caused Plaintiff to lose a significant amount of money it was owed on the contract. Accordingly, Defendant's motion must be denied in its entirety.

Under New Jersey law, a claimant alleging tortious interference with contractual relations must allege: "(a) the existence of a contract (b) intentional interference, (c) loss or breach of the contract, and (d) damages." *ThermoLife Int'l LLC v. Connors*, No. CIV. 2:13-4399 KM, 2014 WL 1050789, at *3 (D.N.J. Mar. 17, 2014); *See also Oakwood Labs., LLC v. Thanoo*, No. 17-CV-05090(PGS), 2018 WL 2973384, at *6 (D.N.J. June 12, 2018)

Here, Defendant argues that Plaintiff failed to allege specific facts that 1) it intentionally interfered with the contract and 2) that the contract was already in breach. With respect to Defendant's first argument, a claim for tortious interference with a contract is not subject to the specific pleading requirement imposed by Fed. R. Civ. P. 9(b). Therefore, all that is needed to plead a proper claim for relief is a "short and plain statement of the claim showing that the pleader is entitled to relief" pursuant to Fed. R. Civ. P. 8(a)(2). Plaintiff complies with Fed. R. Civ. P. 8(a)(2) by providing details of Clear Skies' involvement in the two transactions outlined in § A *Supra*. There, the Plaintiff described Clear Skies' involvement in the short sale scheme as a title agent. The properly plead facts suggest that Clear Skies intentionally derilicted its statutorily obligated duty by issuing title insurance on a short sale transaction that violated HUD requirements. Therefore, Plaintiff properly plead facts alleging that Clear Skies intentionally interfered with Plaintiff's contract with the borrower.

Further, Plaintiff properly plead sufficient facts that established that Plaintiff suffered a loss as a result of Clear skies' intentional interference. Clear Skies is correct that the contract was already in default. However, it fails to cite any supporting authority for its argument that the default caused any claim Capital Mortgage may have had was severed by the breach of contract by the borrower. Contrary to what Clear Skies argues, this Court has held that a claim

9

for tortious interference with a contract is distinct and does not necessarily rely on a breach of a contract for relief. *See LoanDepot.com v. CrossCountry Mortgage Inc.*, 399 F. Supp. 3d 226 (D.N.J 2019). Plaintiff needs to show that it incurred losses as a result of Clear Skies' interference, which Plaintiff clearly did in its complaint. *See ThermoLife Int'l LLC supra. See also, Oakwood Labs, LLC Surpa. See also* ECF Dckt # 1 at ¶¶ 35-36. Specifically, Plaintiff provided details on how Clear Skies and its fellow participants in the short sale scheme defrauded Plaintiff, which resulted in Plaintiff incurring tremendous losses by only recover a fraction of what it was owed pursuant to the lien. *See id*.

Plaintiff's rights for repayment under the Mortgage was still protected despite the fact that the borrowers under the Mortgage were in default and breach of contract. See § A *supra*. If all claims for tortious interference with a contract were severed because of a breach of contract, as argued Clear Skies, it would be impossible for claimants to recover relief under this legal theory. All that would be needed under Clear Skies theory is for a third-party defendant, like Clear Skies, to interfere with a contract and then make sure that a party to that contract breach the contract. Such logic is inconsistent with this Court's rulings on tortious interference cases. Accordingly, Plaintiff properly plead sufficient facts that established that Plaintiff suffered a loss as a result of Clear skies' intentional interference.

For the reasons set forth above, Plaintiff properly plead sufficient facts for relief under its tortious interference with a contract cause of action and Defendant's argument against it is without merit. Accordingly, Defendant's Motion to dismiss must be denied in its entirety.

IV.   **CONCLUSION**

For the reasons set forth above, Plaintiff established that it plead sufficient facts for the above causes of action. Therefore, Clear Skies' Motion to Dismiss pursuant to Fed. R. Civ. P. 12b (6) must be denied.

Dated: October 18, 2021       **HASBANI & LIGHT, P.C.**
        New York, New York

*/s/ Peter Y. Roh*_____
Danielle P. Light, Esq.
Peter Y. Roh, Esq.
450 Seventh Avenue, Suite 1408
New York, New York 10123
(212) 643-6677
proh@hasbanilight.com
*Counsel for Plaintiff Siwell, Inc., d/b/a*
*Capital Mortgage Services of Texas*